All right, we have from the government, Mr. Stern, you're reserved two minutes for rebuttal. Thank you, your honors, and may it please the court. My name is Dylan Stern. I'm an assistant United States attorney in the Eastern District of New York, and I represented the government in the suppression hearing before the district court. As this court has frequently stated, the exclusionary rule is an extraordinary remedy, a decision to deprive the fact finder of valuable information because there was outrageous government conduct that needs to be deterred. But the conduct underlying the district court's application of the exclusionary rule in this case was far from outrageous. What the district court was confronted with here was a search that was executed in a manner supported by abundant case law and the federal rules, entirely consistent with countless searches across the country. The district court's determination that this routine standard search was constitutionally unreasonable was error and the decision to suppress the statements that Warren Joyce made to law enforcement. This was not defendants theory for suppression. That's correct. The defendants theory for suppression was that he was not Miran dies and his statements were involuntary. Yes, that's correct. And there wasn't an unreasonable search claim, a Fourth Amendment claim for basis for suppression in the application to suppress. That's true, Your Honor. So the hearing that was conducted was premised upon the defendants theory, is that correct? That's true, Your Honor. And then at some point in time, the district court judge got interested in the manner of execution and made a reference to his awareness of certain other individuals' homes who had been searched and then began to express concern about that somehow the timing of the search, the number of officers involved, and the length of time between the knock and the intrusion somehow made the search oppressive and unreasonable. That's correct, Your Honor. Were there any findings of fact as to whether the defendant was Miran dies? There were not, Your Honor. I believe it's actually footnote five of the district court's opinion. The footnote specifically says that he doesn't have to include the very basis upon which the defendant sought suppression. That's correct. If you're right, what's the remedy here? So what the government is asking for here is reversal of the order, suppressing the statements, because what the district court did here was suppress the statements on Fourth Amendment unreasonableness grounds. He identified these three factors, as you mentioned, Your Honor, the time of the search warrant execution being at 6 a.m., the 30 to 50 second wait time. The time period which was specifically authorized to the warrant. That's correct. That's Government Appendix 31. Check the box between 6 a.m. and 10 p.m. Yes. The second factor was this 30 to 50 second wait time between when law enforcement knocked and announced their presence and then upon hearing nothing entered Mr. Joyce's apartment. A time period which you note in your brief the Supreme Court's approved previously. That's correct. And then the third factor was the size of the search team, which here was 10 to 12 individuals. And the fact that the first couple of people, I think the word couple was used by Detective Gerger on Government Appendix 127, that the first couple of people entered with guns drawn at the time of this forcible entry. Those were the factors underlying the district court's determination that this was constitutionally unreasonable. And none of those factors withstand scrutiny, whether viewed individually or collectively. Judge Wesley, as you note, with regard to the 6 a.m. entry, provided for in the face of the warrant, 6 a.m. to 10 p.m. This is further endorsed by the federal rules. Federal Rule of Criminal Procedure 41 defines daytime as beginning. Is the standard here objective or subjective in the context of how it affected the defendant? It is objective. The Supreme Court's been clear that when determining what constitutes reasonable police action, it's an objective standard applies. So the district court's, I suppose, finding that this was intended to put Mr. Joyce in a position where he readily provides information, it's just not relevant to the analysis because it's an objective reasonableness standard based on the totality. That's correct, Your Honor. It is an objective reasonableness test. And I would go further as to say when viewed through that objective lens, again, each of these three factors that the district court relied upon don't really bear the weight that the district court has put on it. I suppose one question, because it is, these are, each of the factors, I think, do seem fairly routine in isolation. Obviously the time is authorized in the rules and the warrant, the amount of time. In your view, could the same set of circumstances, number of officers breaking down the door after 30 to 50 seconds, guns drawn at 6 a.m., could that justify a warranted search for any crime under any circumstances? Or might there be a set of circumstances where that could be deemed appropriate? And maybe the answer is no, there isn't. Any legal warrant for a federal crime could justify 12 officers, weapons drawn, 6 a.m., breaking down the door after 30 to 50 seconds. I find it hard to conceive of an example where this structure, I guess, these factors, would not be appropriate or could be found to be constitutionally unreasonable. In particular, I think about the element of the guns having been drawn here. It's not that the door was kicked down upon entry, that this was a no-knock warrant and they entered Mr. Joyce's apartment in that manner. They knocked, they waited 30 to 50 seconds, and they heard nothing. So in that circumstance, not knowing, the officer can't possibly know what's behind the door in that circumstance. So the first couple enter, guns drawn. And here, Detective Gerger's unrebutted testimony is that they enter with guns drawn. They do a protective sweep. I believe that lasts for a couple of minutes, at which point they holster the guns, they take the temperature down, and they proceed to interview Mr. Joyce after that. So I don't know what the most, a tax crime or insider trading, 6 a.m., guns drawn, kids in the home, 30 to 50 second wait, knock down the door, and let's assume no, I mean, here there's an old criminal arrest, let's assume a big house. I don't know. Is the right way to think of this that because each of these factors are permissible in isolation, that in the aggregate, no matter what, it's fine? I think it's always important to do sort of a fact-specific analysis. So as you mentioned, a tax crime perhaps in a giant house. I think about the size of the house. I know that the amount of wait time that's been found to be reasonable could vary by the size of the dwelling. Here, though, it was an approximately 1,000 square foot apartment. And while Mr. Joyce here was not known to have a gun or be suspected of committing a violent crime, A, it's widespread. Everybody, it's very well known that gun ownership might not be documented. This is an emotionally charged crime. There are absolutely examples of individuals reacting violently or erratically in this exact circumstance, and entering with guns drawn when nobody answers after a forcible entry in order to protect officers is constitutionally reasonable. I believe I have two minutes reserved for rebuttal. You do. Thank you. Thank you. We'll hear from Mr. Mervis. May it please the Court. Tony Mervis appearing on behalf of the appellee. Your Honors, I would submit that the officer's conduct was unreasonable in light of the fact that there were two children that were in the apartment. Does that preclude someone from having a gun and using it? It does not, Judge. So the presence of the children might be of concern, but it certainly didn't foretell as to how Mr. Joyce would react to the fact that they were going to execute a search warrant and that it might reveal to his family that he had a computer that had child pornography on it, right? Yes, Judge. And, you know, in upstate New York, a group of teenagers pulled into a driveway because they were lost, and a young lady was shot. People do strange things. A young boy in Chicago knocked on the door. It was the wrong neighborhood, and the fellow shot him through the door. People who are law-abiding citizens do strange things sometimes. Are the officers supposed to be prescient with regard to how someone's going to react to the execution of a warrant? I mean, in hindsight, I agree with you. It seems excessive. I agree with you. It seems excessive in hindsight, but hindsight's always in 2020. Sure. And law enforcement has to keep— That wasn't your theory, though. It wasn't. You know, Mr. Berges, I was a criminal defense lawyer a long, long time ago, and I think to myself, geez, you're sitting there. I can understand why you didn't put your client on the stand. You know, and the judge implored you to put your client on the stand. Your theory was that he was a Miranda because there's—and you developed some good testimony about that because there's a problem with the time on the Miranda waiver, and so you developed that. Your theory wasn't—and I'm not faulting you. Please don't get me wrong. But your theory was not that the search was objectively unreasonable, was it? It was not. Okay. But this is something that the district court came up with. Yes. In retrospect and in hindsight, I do agree with the district court in terms of— Of course you do. I don't blame you. I would, too. Don't question the victory, Mr. Berges. I don't blame you at all. Okay. But if we were—if we disagreed with the district court in light of, I think Judge Wesley raised this earlier, with the government, the fact that the court did not address the argument you actually raised, which is the Fifth Amendment, Miranda, would the remedy be to require the district court to address the Fifth Amendment? And if we found that the Fourth Amendment suppression was not to be sustained, then this Fifth Amendment argument has not been addressed. Is that right? That's correct. And do you persist in that argument? I don't withdraw it. I still believe that there was an issue with the Miranda. And when it was signed, we have a law enforcement officer that was working for 20 years. There's a certain way of him doing it. And in this particular situation, he does it completely differently. I mean, that has to be resolved if it goes back. Sorry? That has to be resolved if we were to reverse on the Fourth Amendment grounds. And I suppose it's up to the district court what further proceedings for resolution, but it's been preserved and not yet resolved. So your position, I gather, would be it goes back to the district court and we figure out what process to resolve it. Does your brief argue that? Does your brief ask us to do that? It does not, no. No, it doesn't. No, it argues the district court's position. Okay. Okay. Okay. Just one moment. When looking at law enforcement's conduct in executing a warrant, we have to look at how they execute the search warrant, not just whether they did certain factors like come in after 6 a.m., but look at it in its entirety. And the fact that they come in at 6 a.m. with a group of 12 men with loaded firearms, and they rush in and break down the door, there is something to it in terms of catching the person off guard. Do you have any authority for the proposition that a comparable set of circumstances is an unreasonable? Personal experience from what I've seen with a lot of cases where law enforcement does this. I mean, it's standard, right? More or less, yes. That's what they always do. And a lot of times they'll get people that know not to make a statement, and they make statements. But you don't have any authority to point to which suggests that this compilation of circumstances constitutes a Fourth Amendment violation. No, I do not. I just submit that in terms of looking at it, a reasonable person would behave like Mr. Joystick in this situation, and it would elicit a statement from him. Law enforcement accomplished what they wanted to with executing the arrest this way. They could have arrested him in the airport. He was supposed to fly out that day. They didn't. They came in at 6 a.m. What's wrong with law enforcement being successful at law enforcement? There's nothing wrong with it. It's very good when law enforcement is successful at law enforcement. This was a personal computer at home, wasn't it? Yes. Okay. Yes. But there's nothing wrong with law enforcement being law enforcement and being successful in terms of what they do. It's just that the way that they do it, it can sometimes be overwhelming. You know, 12 officers with long guns pointed at Mr. Joyce, his wife, and his two kids. It's a lot. I have nothing further. Thank you. Thank you, Mr. Mervis. Thank you. Mr. Stern. Thank you, Your Honors. First, with regard to the question of, or the point that Mr. Joyce raised, excuse me, Mr. Mervis raised about the presence of children, the existence of children in the house does not factor into whether this was a constitutionally reasonable search, and to the extent that it does, it actually cuts in favor that more officers should be required to execute the search. This was a search where, according to the tactical plan, which is on Government Appendix 197, I think four total people on the team were either outside or rear, leaving approximately eight officers for a search to execute the search warrant, excuse me, in an apartment that they understood to have four people inside. This ratio, and also executed by two agencies, HSI and NYPD, this ratio of two officers to one occupant is eminently reasonable and does not support the district court's conclusion that the search team was somehow unreasonably large. I gave Mr. Mervis a hard time about his brief, but the fact of the matter is that he did present a theory to the district court and asked for relief, and then the district court, just in a footnote, says I don't need to reach it. If we were to agree with your position, that leaves that theory unresolved with regard to this defendant, doesn't it? It is true that the district court did not reach that issue. So shouldn't the district court at least, on the record that was established, that the two litigants that developed in front of the court, the court at least consider the legitimacy of the defendant's contentions? I think that would make sense for the government, your honor, and I would note that the record to that point has been developed through Detective Gerger's testimony. The point is that that was what everybody was litigating about. Exactly, and there was an opportunity for that to be presented before the district court, and that point could be resolved. You wouldn't fight the contention on remand that that still needs to be resolved. You might argue with the district court about what further briefing or argument or hearing is either required or necessary or appropriate, but it does need to be resolved. It is clear from the district court's opinion that it did not resolve it. I guess we will have to communicate with the district court about appropriate next steps, considering that there was a hearing on this, it has been fully developed, but we understand that the district court did not resolve that issue. So unless the court has any further questions, thank you. Thank you to both sides. Nicely argued, nicely briefed. The matter is submitted and taken under advisement.